## IN THE COURT OF APPEALS OF IOWA

No. 23-0254
Filed April 26, 2023

**IN THE INTEREST OF Z.J.,**
**Minor Child,**

**V.C., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Carrie K. Bryner,
District Associate Judge.


        A father appeals the termination of his parental rights to his child.
**AFFIRMED.**


        Robert W. Davison, Cedar Rapids, for appellant father.

        Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney
General, for appellee State.

        Kimberly Opatz of Linn County Advocate, Cedar Rapids, attorney and
guardian ad litem for minor child.


        Considered by Badding, P.J., Buller, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2023).

**DANILSON, Senior Judge.**

A father appeals the termination of his parental rights to his child, challenging the grounds for termination and contending termination is not in the child's best interests. Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

The mother and father began their relationship toward the end of 2019. The mother gave birth to an older child, V.C., in September 2020. The department of health and human services became involved with the family later that year due to concerns that then two-month-old V.C. was being left home alone "for unknown periods of time," the family's "apartment was in a deplorable condition," and the mother was using methamphetamine while caring for the child. V.C. was adjudicated a child in need of assistance (CINA), V.C. was removed from the home, a safety plan was implemented, and services were provided to the mother and father.[1] Eventually, paternity testing determined the father was not V.C.'s biological father. But the couple "remained in a relationship," and "[c]oncerns about [their] stability and safety continued throughout th[e] case," including physical violence, drug use, and inconsistent housing. The mother's parental rights to V.C. were terminated in March 2022.

Meanwhile, in September 2021, the father moved to his home state of New York. Several months later in Iowa, the mother gave birth to Z.J., who was immediately removed from her care due to her lack of progress in V.C.'s case. In

---

[1] Although testing determined he was not V.C.'s biological father, "he and [the mother] were a couple for a majority of [V.C.'s] case, and services were made available to [the father] during that time."

March 2022, paternity testing confirmed the father to be Z.J.'s biological father. Z.J. was adjudicated a CINA, and he has remained out of parental care since birth. The father has never seen Z.J. in person.

With the parents making little progress toward reunification, the State filed a petition to terminate parental rights. Following a hearing over two days in September 2022, the juvenile court entered an order terminating their parental rights. The father appealed.[2]

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

## III.    *Discussion*

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2022). Under Iowa Code section 232.116(1)(e), the State must establish three elements:

> (1) The child has been adjudicated a [CINA].
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case

---

[2] The parental rights of mother were also terminated, and she did not appeal.

permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Under Iowa Code section 232.116(1)(h), the State must establish four elements:

(1) The child is three years of age or younger.
(2) The child has been adjudicated a [CINA].
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months . . . .
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time.

On appeal, the father contends "[t]he grounds for termination as it relates to the child and Iowa Code section 232.116(1)(e) and (h) have not been established." The father does not specify what element or elements he is challenging. Instead, he argues "Z.J. could easily be placed with his grandmother in New York in a safe environment and give [the father] a chance to prove himself." Specifically, the father contends:

An interstate compact home study was approved by the State of New York for [the father's] mother. Z.J. could easily be placed there as either a long-term or shorter-term placement to allow Z.J. to remain with family and form a stronger bond with his father. . . . An extension of time would have allowed that to occur, but [the father] was not given the chance to do so.

We interpret the father's contention to be an argument that he should have been granted additional time to work toward reunification. Bypassing the State's claim the father has waived a challenge to the sufficiency of the evidence supporting the grounds for termination,[3] we find a ground for termination of the

_____

[3] *Cf. In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (finding the mother "adequately raised the issue on appeal without targeting reasonable efforts argument to each specific subsection").

father's parental rights to Z.J. has been established under section 232.116(1)(h). At the time of the termination hearing, the father had never met Z.J. "face to face," had not provided financially for the child, and struggled to maintain his own independence without assistance from his mother. A caseworker recalled having safety concerns with the father's parenting of V.C. and opined she would not place a child in his care. Another caseworker testified the father lacked "basic parenting skills," had "called [V.C.] names" like "dummy or idiot," and had exhibited aggressive behavior toward the mother and providers. Indeed, the record includes various reports of the father's "anger issues," including that he "punch[ed] the wall" when talking to providers and "made threatening comments about providers and other individuals."

Although the father's physical distance from the child and limited financial means should not alone be a cause to terminate his parental rights, the facts reflect a lack of any evidence showing Z.J. could be safely placed in the father's care at the time of the termination hearing. Thus, termination under section 232.116(1)(h) was proper, and we affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) (noting we may affirm the termination order if the record supports termination on one of the cited grounds).

We further conclude additional time to work toward reunification was not warranted in this case. Contrary to the father's claim that he did not know the mother was pregnant when he moved from Iowa and he only learned he was Z.J.'s father in March 2022, a caseworker testified the father "was aware" of the mother's

pregnancy prior to his move to New York and "believed that he was the father."[4] Yet, despite repeated requests by providers, the father had only very recently participated in substance-abuse and mental-health evaluations. Although the father's substance-abuse evaluation recommended no treatment, a caseworker expressed concern about his acknowledged regular use of marijuana to "maintain his mental health."[5] Aside from the father's drug use, the caseworker opined "the most concerning thing is just the lack of bond with his child" and his "inability to be truthful if [the child] were with him." Indeed, the juvenile court noted the father's "entire testimony was questionable as to the credibility," and the court observed the father "seemed to give conflicting answers to questions throughout his testimony." We give weight to the court's assessment of the father's credibility. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

In addressing the father's request for additional time, we have also considered the paternal grandmother's testimony that she would assist and support the father in caring for Z.J. if the child was placed in his care in New York. But the father's parental responsibilities cannot be assumed by the grandmother— despite her "very good intentions"—particularly in this situation where the father is essentially an unknown to the child and providers.[6] We also hesitate to take that

---

[4] Department reports also noted the mother "planned to get custody of [V.C.] back and then move to New York to be with [the father]."

[5] As the juvenile court observed, use of marijuana is legal in New York. Even so, abuse of the substance may interfere with parenting, as with any other mind-altering substances including alcohol, and there is some evidence here that the father's consumption of the substance may exceed casual use.

[6] As one caseworker explained:

> He has never met [Z.J.] in person, never ever demonstrated his parenting abilities. There were many concerns in the last case that prevented [the mother and the father] from moving forward in

leap of faith given the testimony of several caseworkers that the grandmother "enables" the father and does not "recognize[] the concerns" with his parenting.[7]

Lastly, the father asserts termination was not in the child's best interests "because of the importance of maintaining children with biological family and strengthening that bond."  Under our statutory best-interests framework, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  Consideration of these factors and the father's lack of progress or participation in this case provides clear and convincing evidence termination of his parental rights is in the child's best interests.  We affirm.

**AFFIRMED.**

---

interactions, parenting concerns.  It's hard to assess parenting when he is not here to be a parent to his child.

[7] That caseworker further opined, "I don't believe guardianship is ever appropriate for a child this young."